30811 United States v. Seawright, Ms. Flager, and just to observe that we do have a traffic light system and we'll very much appreciate your adhering to the time limits. Thank you, Your Honor. Yep. Ada Flager, on behalf of Ms. Gina Seawright, I'd like to reserve five minutes for rebuttal, please. The District Court, in finding that Ms. Seawright violated the conditions of her supervised release, relied on, admitted and relied on hearsay evidence without engaging in the requisite balancing test and without expressly finding good cause. Under over 20 years of this Court's precedent, that constitutes a reversible constitutional violation unless the government can demonstrate that the error was harmless by demonstrating that good cause existed, that its basis was found in the record, and that the District Court impliedly found it. The government has not and cannot do that in this case. Good cause does not exist for the admission of what would otherwise violate Ms. Seawright's confrontation right. First, Ms. Seawright had a strong interest in the confrontation of these witnesses. This Court has found where the— Which witnesses are you talking about? All of the hearsay evidence came from the three police reports that included two different law enforcement officers. Those are the ones that are named on pages 136 and 130—I'm sorry, 137 and 138 of the record, and the witnesses that they spoke with, as well as the witness that signed the second exhibit at page 143 of the record, and the law enforcement officer, I guess it's the same law enforcement officer that signed the third. Well, let me ask just a practical question. The consequences of—I mean, I suppose she had a Fifth Amendment right, so she wasn't going to testify about any of this herself? Correct, Your Honor. She had a Fifth Amendment right in the other— In the other prosecutions. And these were warrants? They were warrants that had been issued. The evidence actually presented at the government, which had been presented at the detention hearing, was the three arrest warrants, as well as for one of the arrest warrants being accompanying police report. You did object contemporaneously? Yes, Your Honor. Yes, I remember that. Okay. And my other— It wasn't clear to me that the judge really relied on those convictions, because he seemed more concerned about the failure of the drug test. What do you see in the record that tells you for sure that that's what the judge relied on, that is, the criminal violations or alleged criminal violations? Certainly, Your Honor. First, the judgment revoking supervised release names on page 158 of the record, names as the sixth violation, failed to not commit another federal, state, or local crime. So the district court certainly found that, and it was one of its reasons for revoking Ms. Seawright's supervised release. It need not be the exclusive reason for revoking her supervised release in order for Ms. Seawright to have an interest in it. And in fact, her interest was stronger in this case, because that violation, failure to not commit another crime, was the only guidelines mandatory ground for revocation in this case. I thought the drug testing was also. The drug testing is not a mandatory condition. But it's a class B or whatever. I believe it's actually a technical violation, grade C violation. So the grade A and grade B are new criminal conduct. And I don't have it in front of me. Well, let me ask you one other thing that's a practical question. As I read the record, even if you win here, well, if you win here, then she was subject to a 5 to 11 month term. I believe it's 6 to 12, Your Honor. 6 to 12. And the 12 runs out almost momentarily. Yes, Your Honor. So if we were to vacate and remand for resentencing, what would happen? Remand for just resentencing, Your Honor, or for a new revocation? Whatever. Yes. For a new revocation hearing, the judge would have to make the explicit finding about good cause, assuming as we argue that. Well, I understand that. But if she's already served 12 months, and 12 months was the month she was going to serve, I'm not saying this is anybody's fault. But, I mean, that's just the way it happened, that she will have, you know. She's not going to get let out immediately, right? Because with a new revocation hearing, she could be sentenced to the longer period. She could be sentenced to a longer period. Certainly, Your Honor, Ms. Seawright would prefer to go back and have a new revocation hearing, at which even if she were to get the time served sentence of 12 months, that even if she had served longer than 12 months would certainly be shorter than the statutory maximum 24 months. So even were relief not to be complete for Ms. Seawright, it would certainly be preferable for her to. And otherwise, she gets out this October. And I'm just wondering, again, as a practical matter, approximately how long would it take, let's say we issued our decision tomorrow, I'm not promising, but suppose we did, how long would it take in the district courts of New Orleans to get a revocation hearing set? We recently had another case similar to this in our office and requested that this court grant or issue an expedited mandate or release the mandate in an expedited manner. And then we're able to, I believe within two weeks, have the district court reconvene for new proceedings. Okay, good. That was not in a revocation context, but it is a ballpark of how long it would take for that sort of thing. So, but even for a grade C violation, couldn't the judge depart and give her up to 24 months? The judge could have departed and given her up to 24 months. But I mean, on resentencing, he could too, couldn't he? But he could, yes, on resentencing, give her up to 24 months. That, the question before this court on harmlessness, however, is not whether or not the judge had the statutory authority to give a 24-month sentence, but whether or not the constitutional violation was harmless. And the fact that the judge had the statutory authority doesn't answer that harmlessness question. And you don't think a failure of the drug test is a grade B violation? My understanding when I checked the case law, I believe this weekend, was that it wasn't. I don't, unfortunately, have that citation in front of me, but I'd be happy to supplement this court with that. But the actual language of the guidelines discusses grade A and grade B violations being new criminal conduct. And to your Honor's question about whether or not the district court could, relying on only the grade C violations, still revoke her supervised release and still impose the statutory maximum, in two cases out of this court in 2016, Jimmison and Justice, Justice which is cited in our briefs, both of those defendants had admitted to grade C violations and contested only the grade B and, in the case of Justice, grade A violations which were new criminal conduct. And in both of those cases, this court found the error not harmless, despite the fact that there were admitted grade C violations on the record in the district court. Well, the district judge, of course, it seems to me, you can correct me, appeared to agree that failure to engage in drug, comply with drug testing alone would mandate revocation. The government cites in its brief 3583 G3. You've run this to ground and you're asserting to this court that the district judge and the government's wrong about that? I'm asserting to this court that that isn't what happened in the district court, despite that one exchange between the district court and the prosecutor which occurred after the revocation had already been ruled upon. The district court had already revoked Ms. Seawright when that exchange happened. And nothing else in the record supports a finding of mandatory revocation under 3583 G. And one of our panel opinions from last year, again, government side, not precedential, says failure to comply with drug testing mandated revocation. Did you look at that case? Yes, certainly failure to comply with the court-ordered drug testing condition of supervised release would mandate revocation, although, again, there would be, there judge must consider certain things like the availability of treatment before revoking. But again, that is not what happened here. There was no notice provided that there was mandatory revocation. The drug testing was being administered as part of the drug treatment condition. And again, in our . . . Did you, I mean, I'm not invading your concerns, your discussions with your client, but didn't you advise her that even if you get a revocation, hearing the charges against her in those arrest warrants are fairly serious? Felony theft and basically theft of a vehicle. And felony theft is she got the key to the company safe and she stole money from it. My goodness. Unless she's going to forthrightly declare I didn't do that, those are very serious. And it seems to me one would have to advise one's client that there might be a serious downside to getting another hearing here. There are certainly calculations on both sides in these circumstances. The right, however, to confront the hearsay witnesses and focus specifically on this supervised release revocation hearing is what's before the court. And there are ways that Ms. Seawright, without herself testifying, would be able to cross examine those witnesses on the veracity of their statements, their credibility, that sort of thing. Do a call. Go ahead. And to return to Judge Southwick's question about the mandatory revocation. Again, that is not in the petition for warrant. It's not in the rule to revoke. It's not in the amended rule to revoke. It was not noticed to Ms. Seawright at the initial appearance or at her detention. And the cases and administrative regulations cited in our brief demonstrate that there is in fact a distinction between that mandatory revocation for failure to comply with court ordered drug testing and the drug treatment condition, which is in fact what Ms. Seawright was found to have violated in the judgment, failure to participate in drug alcohol treatment as instructed. And that may encompass drug testing by the service provider, but not a mandatory revocation. Is a violation of a court order for drug testing a grade B or grade C? Is the 3583G mandatory violation? I believe that that's a grade C as well. That was my understanding of what Your Honor's question was before. My answer is that it's a technical violation because the A and B are limited to new criminal conduct. All right. Well, I guess we have your argument. Okay. Thank you, Your Honor. Okay. Thank you. May it please the Court, Dianne Copes and Ryan McLaren for the government. There are a couple of things that need to be clarified here, and one of them is what was relied on, what wasn't, and what we are relying on here today.  You probably noticed from our brief, we do not rely on her commission of any crime while on supervised release. We don't make an argument about it. There's a reason. We didn't prove it. But also, the Court didn't rely on it, as Judge Davis pointed out, and you can see that it's a very short supervised release revocation hearing. At the very beginning, the AUSA says, as a note, I would note that the arrest warrants are in the record. Then the Court says, does anyone want to put on any evidence? No evidence. Then Judge Feldman immediately lists what he says is the record on revocation in this case. And this is at pages 223 to 224. He says, first, went to the clinic, didn't provide the analysis. Second, didn't show up for intensive outpatient treatment. Third, probation officer tried to reach her. All such attempts were unsuccessful. Fourth, there were outstanding warrants, and that is pertinent, the existence of the facts underlying them was pertinent because one of her conditions was she was supposed to report speaking to law enforcement, and after she was told to go into intensive outpatient treatment, she didn't talk to anybody. She didn't talk to, but that adds back to what the Court relied on. There were outstanding warrants, and she didn't pay restitution for more than a year. This is critical, Your Honor, and it doesn't come across in our briefs, and I apologize for that. Judge Feldman then says, does either side wish to correct anything that I understand is the state of the record? And her counsel says, no, Your Honor. So the facts I just recited to you were admitted by Ms. Seawright, and immediately after her counsel says, no, Your Honor, the Court finds that the defendant has clearly and patently violated the conditions of her supervised release, and her supervised release is revoked. And at that point, she allocutes. There's some question about her veracity that the Court goes through. And then finally, as to the sentence, he says, I don't care if it's grade B or grade C. What is the statutory maximum? Do you agree with me that the statutory maximum is 24 months? Her counsel says, yes, and he says, that's what I'm giving. And that's at page 233 of the record. So the mention of the arrest warrant is the extent of the government's discussion. There's at no point did the government say she committed these crimes. Now, there is a problem with the judgment, and no party noted it, but there needs to be either a Rule 35 motion or a limited remand to fix this, because part of it needs to be fixed. In the judgment at page 158 of the record, it says that the defendant admitted, the admitted box is checked, that she failed to not commit another federal, state, or local crime. It's clear from the transcript in the record that is wrong. She never admitted that she committed a crime. In fact, Judge Fellman warned her against self-incrimination at the hearing. He said, I know you have pending charges, and I don't want you to say anything that will incriminate yourself in them. And that is, that's somewhere in the middle of the very short hearing. I'm scanning for it, but I don't have that site, but it's somewhere between 223 and 233. He even advises her, don't incriminate yourself in those proceedings. But there is an error that no party noticed, and that is that it says that Ms. Seawright admitted that she committed crimes, and she didn't, and that needs to be fixed. The oral pronouncement controls. You can see she doesn't admit to committing any crimes. And part six of the judgment just needs to be stricken. It needs to be crossed out. But there's no hearsay issue here. May I just say, I thought I was going nuts because I had read your brief, I had read her brief, and the feature of it was the outstanding warrant. I gather now you're arguing harmless error, or are you arguing no error at all? Your Honor, we didn't argue that the warrants proved the crime. Well, the brief says the district court did not abuse its discretion in revoking, A, standard of review, B, revocation was mandatory without regard to her three outstanding, I'm sorry, without regard. Are you still focused? Your Honor, I'm so sorry. I interrupted you, Judge Jones. I'm sorry. It's okay. Maybe I read it wrong. Go ahead. I'm very bad about that. Please forgive me. That's okay. What our argument in the brief was, it didn't have anything to do with the mandatory nature of the guidelines. What about the notice to the defendant, the reasons for revocation that went to her as the notice? Your Honor, I haven't found a case. There's not a lot of law on supervised release. The best resource I found was from the Sentencing Commission itself. It's called Federal Offenders Sentenced to Supervised Release. It's July 2010 on their website. It has a fairly comprehensive discussion. Under Morrissey and Gagnon, they are definitely entitled to notice. What that notice is hasn't been, there's no clear definition as to the parameters. But to the extent the court finds there wasn't sufficient notice, and Judge Jones, our argument was that it was statutorily mandated under 3583 G3, not that the crimes made it a Class B violation. We did not take that position because we did not prove that, and the judge did not rely on it. And we do say in our brief that the gravity of her other crimes supported revocation, and she didn't just fail a drug test. I mean, she disconnected her phone. If there hadn't been the warrants, we wouldn't be here. The warrants are mentioned one time. They're noted by the government at the very beginning. She says where they are. There are three warrants. They're signed with probable cause, but we don't rely on them at all. We don't rely on those warrants in our brief. We don't rely on them here today because we did not prove them. And so there's no hearsay question about calling law enforcement officers. We didn't prove them, and when you look at what the court says the state of the record is, Judge Feldman did not list them. He lists the violations. He finds after her counsel admitted every one of them, he finds that she clearly and patently violated the terms of her supervisor lease. And again, that's at pages 223 to 24. It's followed by her admission to those, and it's followed by the court saying she clearly and patently violated the terms, and she is revoked. All those were grade C violations, right? Your Honor, yes, they are. But the use of the term mandatory or discretionary in the guidelines, and this is explained well in the reference that I gave you, the July 2010 Sentencing Commission Report, nothing is mandatory as far as the policy statements regarding supervisor lease go. And the Sentencing Commission points out that although it's written in mandatory terms, the court is free to do what it wants. So the difference between Class B and Class C really amounts to 6 to 12 months or 12 to 18 months. But as in Henry, the court noted in Henry we might have a different case if the judge said, I'm going to impose this sentence regardless of the assault that was in question in Henry. Here . . . Let me just go back for a second because your oral argument quotes from what the district court held, but your brief at pages 10 to 11 lists what you say are the revocation findings, quote, with no indication that the arrest warrants drove the revocation. And then you have her failure to do drug testing and failure to participate in treatment, failure to communicate with the probation officer. And then it says sometime in February 2016, a detective, Mrs. Judge Feldman speaking, with the Hammond Police Department, informed her probation officer about outstanding warrants in Tangibahoa Parish for the following, felony theft, monetary instrument abuse, and theft of a motor vehicle, and then finally, failure to pay restitution. So it's definitely in there as one of his stated reasons for revocation. But, Your Honor, he asked her counsel if she . . . Well, I wish that had been in your brief. . . . and she said, no, Your Honor. I don't disagree. That's wonderful, but I wish that had been in your brief. I wish it had been in my brief, too. I didn't see it until preparing for oral argument. I reviewed the brief, and, Your Honor, the brief is what it is. It relies a bit too heavily on 3583G3 and not on those findings and her admission of those findings at pages 223 to 224 of the record. I apologize for that. Let me just make an ex cathedra remark that we've seen a bunch of cases lately, not necessarily from Eastern District of Louisiana at all, but here and there, where the U.S. attorney's appellate people say one thing, and the FPD on appeals says another thing, and neither one of them appears to have talked to the trial counsel. And, you know, that would really help to clarify issues for us on appeal if people just talked to their trial counsel. Your Honor, trial counsel is Julia Evans. She's in the court today, and I conferred with her heavily. She wrote the initial draft of the brief, and I assisted her, and I'm the one who added the overemphasis of the drug testing mandatory. That is the only truly mandatory thing, isn't it, because it's statutory, and it— Could the judge have given the same sentence on all grade C violations? Well, he did, Your Honor. Our argument is he didn't rely on— Without drug testing, without the warrant, could he have given the same sentence that he pronounced? Yes, Your Honor. She exhibited complete disrespect for— I understand that. But I'm saying, we would have been up here solely—we wouldn't have been here at all, because the only question would have been abuse of discretion, right? I understand, Your Honor. Well, no, no, no. I'm not criticizing. I'm just laying it out. Even if there were errors on this, too, he could have given the same. But it's not like a sentence after a guilty verdict. The judge, if he wants to go above the guidelines, he doesn't say, I'm departing? No, Your Honor. He says—he repeats the word patently violated. The conclusion he reached after not mentioning anything about her committing crimes and supervised release. But the guideline sentence was—the max was 12 months, right? For a grade C violation. Well, yes, or 12 to 18 for a B. But yes, he—and he said—he originally found clearly and patently violated. And then he said he repeated the word patently at the end after she had given some allocution that he was concerned about. And then he said, I don't care about grade C or grade B. What's the statutory maximum? Do you agree it's 24 months? Her counsel said, yes. He said, I'm giving you the statutory maximum. So he—she presented both scenarios as far as 6 to 12 or 12 to 18. And he said, it doesn't matter. I'm giving 24 months. He was a judge intimately familiar with this defendant from the very beginning. I mean, he knew that she was a Category 4 and that she was on parole at the time she committed the crime for which she was on supervised release for. I mean, he's been familiar with her all along. And she kind of—she gets up and makes some excuses at allocution that don't jive. You can see his exasperation with her making excuses that are completely contrary to a letter that he had received from her mother that isn't in the record, but he refers to it quite a bit. And also, she said that she expected her probation officer to give her a summons before she had to go for drug testing. And so he called the probation officer up, and the probation officer said, I gave her a simple instruction. And she failed to follow it. She just wants to do what she wants to do. And what she wanted to do was ignore everything that she was required to do. And in fact, her own witness got up and said—she said, I think she didn't turn herself in because she was afraid her supervised release was going to be revoked. And then, after the warrant was issued in this case, it took the marshals a month and a half to locate her. That's—she disconnected her phone. She changed her address. Certainly, there were more than enough reasons for the court to find that she clearly and patently supervised. But you don't—you need to take my word for it. You can look to pages 223 and 224 of the record. So in sum, Your Honors— JUSTICE SCALIA. Counsel, before you summarize, let me make sure I understand the timing of this. You quoted from the record 223, 224—Judge Jones read some of it aloud as well—when the warrants were mentioned. When did the Defendant's counsel say that the warrants—objected to say that the warrants were not properly before the court? You indicated this unmentioned in your brief statement where everybody agreed to the evidence in front of the district judge somehow is controlling. I just want to see how that statement corresponds to the argument made in district court, apparently—objection by C. Wright's counsel—that you cannot consider the  MS. GOTTLIEB. Your Honor, at the very beginning, the government said, I would just make a note that the arrest warrants referencing the rule have been admitted into evidence during her revocation hearing. Immediately, her counsel objects. And the court then says, well, everybody can put on evidence here. You have a right to a hearing. But let me tell you the state of the record as I understand it now. And he does not mention the arrest warrants as proving up any crime on her behalf. He only mentions them—and they were relevant because she didn't report one of the other—one of the other things she was accused of. She didn't report to her probation officer that she had been encountered—she had a law enforcement discussion. And so they were relevant. JUSTICE SCALIA. Well, but the district court itself mentioned the warrants. And on the same page is where he mentions this word you like so much, patently violated the conditions of supervised release. So he had just mentioned the warrants as part of his preface for saying she clearly and patently violated probation. MS.  But the existence of the warrants themselves aren't in question. She admitted to them. Do you have anything to correct? No, Your Honor. What is— JUSTICE SCALIA. Well, let me accept that, because that's actually part of where I was going. It seems to me the only admission that C. Wright's counsel made is, yes, in fact, the warrants are there. But insofar as what to make of the judge's statement, is he relying on the fact—and it wasn't just say warrants, it says what they were. And they are very serious allegations, as Judge Jones has pointed out, felony theft, theft of a motor vehicle, something else. It seems to me we'd have to get into Judge Feldman's head saying—head to say that he was not considering these crimes, which were not proven. MS. SCALIA. Your Honor, he says the warrants as part of his recitation of the record. Do you have anything to correct, Gina C. Wright's counsel? No, Your Honor. I find she clearly and patently violated. The existence of the warrants wasn't in question. It's undisputed. And we don't argue that they proved—that we proved the underlying crimes. We argued that we didn't rely on it. Judge Feldman didn't rely on it. And he had plenty of other ammunition to sentence her to 24 months because she disconnected her cell phone, wouldn't call him, wouldn't get in touch, wouldn't do her drug treatment, missed eight sessions, was terminated as unsuccessful. She was in contempt of all of the supervised release conditions here. And that demonstrates that there was plenty more for the Court to do. And then she gets up and apparently says some things that the Court didn't think were true. And so there's—if you just read 223 to 24 again, he says this is the record. And he doesn't say she committed the crimes. And we didn't prove she committed the crimes. So the issue is, was there enough else? And finally, Your Honors, I do think it's critical that the judgment be corrected to show that she did not admit that she committed any crime, because it says she admitted she did, and that's at 158. She didn't. But there's no hearsay question here because I am not before you arguing that we proved it. And if there are no further questions, Your Honor, I will rest on the briefs such as they are in my argument here today. Thank you. Ms. Fleger. Thank you, Your Honors. Just two brief points. First, the government's argument made for the first time essentially an oral argument here that the new criminal conduct was not relied upon in revocation is belied by the entirety of the record. The rule to revoke supervised release filed by the government states, additionally, C. Wright has violated the terms of her supervised release by engaging in criminal conduct. Also, the dispositional report which probation filed in advance of the revocation hearing at page 151 of the record, that C. Wright's conduct involving felony theft, monetary instrument theft, abuse, forgery, and theft of a motor vehicle represents a grade B violation. Then, in the judgment that the district court issued after revoking supervised release at page 158 of the record, violation number six, failed to not commit another federal, state, or local crime. Also, the pages of the revocation transcript which the government has relied upon and stated that the district court made just a perfunctory list or passing mention of the fact that arrest warrants were listed. I would ask this court to review those two pages in their entirety and note that that the judge was citing the violations of supervised release. Perhaps his language was not as precise as it should have been, but those were the violations that the district court found based on the request of the government in the rule to revoke supervised release. Well, I have two questions. The first one is, is it correct that after he cited that list, counsel for Ms. C. Wright said they had no objections, or not objections, say, but, you know, nothing to correct that record? There is nothing to correct that record in the, let's see, on page 224 of the record. Does either side wish to correct anything that I understand is the state of the record? No, Your Honor, from Ms. C. Wright. That comes immediately after Ms. C. Wright had attempted to object to that particular evidence, had been cut off by the judge by then summarizing that evidence. The record, it has been preserved, and there hasn't been an argument that it was waived. And the second question is, when the judge says, I don't care if it's grade B or grade C, here's what I'm giving you, what does that mean? My reading of the record, I admittedly did not hear the page that the government was citing to. I don't see a place where the judge says specifically, I don't care whether it's a grade B or a grade C violation. Well, to be fair, I'm not sure that that site is in the government's brief, but. I don't. It's not. I was trying to flip through right now and try to find that particular quotation. I can't find it. But also, I would ask that this Court remember what is its stated test under these circumstances. Its stated test under these circumstances where hearsay is introduced at a revocation hearing, not in particular where hearsay is the basis for a grade B versus a grade C violation, but where hearsay is introduced in support of a supervisee's revocation, the supervisee is entitled to a district court finding, explicit finding, of good cause for the admission of that hearsay. And that admission is only harmless where the government can prove there was good cause, it's explicit in the record, and the district court impliedly found that good cause. The government attempts to obfuscate this by arguing a different harmlessness standard, a harmlessness standard that might apply to the abuse of discretion or that might apply to a sufficiency claim. You're saying the existence of the warrants in and of itself is hearsay. Those are hearsay statements that were made. No, only, I'm saying the existence of the warrants, as opposed to whatever the, you The existence of the warrants is hearsay. The existence of the warrants, unless the government can demonstrate that they were not introduced for the truth of the matter, and the government was introducing them as stated in their rule to revoke, in order to demonstrate that Ms. Seawright had committed new criminal conduct. And that was the intent for introducing them, and that's the only reason that frankly they're the findings of revocation. They're relevant because the government has charged Ms. Seawright with violating that condition of supervision. That's why the only evidence, such as it is, the only thing that might have been relied on by the judge to say she committed other offenses? That was the only evidence, yes, Your Honor. Those three arrest warrants, one of which had a police report attached to it. And in those is, there are several witness statements that are transcribed. But in the hearing, they didn't say anything about that. They didn't say anything about the arrest warrants? About the underlying charges, other than he summarized. He summarized it. It was introduced by the government. I think it defies credibility to say that the government was not introducing that in order to find a grade B violation, and instead just wanted to float the idea that there were new arrest warrants, particularly when in their rule to revoke, they requested revocation on the ground of new criminal conduct. And that is, in fact, what the judge found, both orally and in his written judgment. Okay. Thank you. We have your...